## SCANLAN v. HORTON.   (No. 8697.)

(Court of Civil Appeals of Texas.· Galveston. May 25, 1925.  Rehearing Denied June 11, 1925.)

**Municipal corporations ⊜═294(5), 455—Notices in proceedings of estate for street improvement affecting property of estate, mailed to an heir and manager for coheirs, held valid.**

Under provisions of Houston City Charter relating to street improvements, requiring city engineer to file statement containing names of persons, etc., owning property abutting on street, and requiring city council to give notice of hearing by publication, and by mail addressed to property owners, notices in proceedings affecting property as that of "T. H. Scanlan Estate," in which notices were mailed to an heir and manager of such property for coheirs, were valid, though notices were not sent nor given to each heir individually.

Error from District Court, Harris County; Chas. E. Ashe, Judge.

Action by Chas. K. Horton against Kate Scanlan and others. Judgment for plaintiff, and the named defendant brings error. Affirmed.

W. J. Howard, of Houston, for plaintiff in error.

Ball, Merrill & Susman, of Houston, for defendant in error.

LANE, J. This suit was brought by Chas. K. Horton, as plaintiff, against T. H. Scanlan Estate, Miss Kate Scanlan, Miss Lillian Scanlan, Miss Charlotte Scanlan, Miss Stella Scanlan, and Miss Alberta Scanlan, as defendants, to recover from the defendants the sum of $2,-350, interest, and attorney's fees, the amount alleged to be due on certain paving certificates issued "against T. H. Scanlan Estate" in payment of certain paving in front of the property described in plaintiff's petition, namely, lots Nos. 8, 9, and 10, in block 171, south side of Buffalo Bayou, city of Houston, Harris county, Tex., and to fix a lien upon the said property and for interest and attorney's fees.

"Defendant in error pleaded that plaintiffs in error were the owners of a very large estate and interest in real property situated in the city of Houston, including the properties upon which he sought to foreclose a lien; that said properties were inherited from the father and mother of plaintiffs in error, and that subsequent to the death of their parents, and on or about the 13th day of December, 1906, the plaintiffs in error, other than Miss Kate Scanlan, made and executed their certain power of attorney, by which they appointed Miss Kate Scanlan their general agent and attorney in fact to control and manage all of the estate left them by their deceased parents, with full power to manage and control said estate, to collect moneys due, to cash checks, execute receipts and releases, draw out moneys from the banks, collect dividends from stocks, execute and renew leases and collect rentals due, keep the property in repair, incur any such expense as she may deem prudent and right in repairing and improving the said properties, and to execute notes and borrow money, to make loans and to perform any and all other acts in reference to said properties that in her judgment may be proper, and that the persons executing the power of attorney could do in person; and that said power of attorney is still in full force and effect, and that since its execution the said Miss Kate Scanlan has acted thereunder in the management and control and improvement of said properties; * * * that said estate consisted of properties the assessed valuation of which was in excess of $700,000; that included in said properties was the Scanlan Building in the city of Houston, where the said Miss Kate Scanlan has at all times had her office where she carried on the business of 'said joint properties under said power of attorney in the name and style of T. H. Scanlan Estate, by which name said properties are, and for a number of years have been, commonly known in the city of Houston; * * * that there was initiated a plan for the pavement by the front foot paving plan of a street in the city of Houston upon which properties belonging to plaintiffs in error abutted; and that all the preliminary steps incident to the pavement· of said street and the assessment of a part of the cost thereof against the property owners were ' taken at the time and in the manner provided by the terms of the city charter, and a certificate reciting the various things required by the terms of the city charter was issued to defendant in error as the contractor who improved said street under contract with the city, after said work had been done and accepted by the city, as provided by the terms of said charter."

Defendants, appellants here, answered by general denial and specially pleaded that none of the preliminary steps, resolutions, ordinances, notices, and proceedings essential to establish personal liability against them, or establish a lien against said property, was directed against the said defendants, and that any attempt to fix personal liability against them, or a lien on their property, was void.

Judgment was rendered in favor of the plaintiff, Chas. K. Horton, for $2,350, the amount of the certificate sued on, together with interest and attorney's fee of $400 against the appellants, Miss Kate Scanlan, Miss Lillian Scanlan, Miss Charlotte Scanlan, Miss Stella Scanlan, and Miss Alberta Scanlan.

A writ of error was sued out from said judgment by the defendant.

The above-mentioned judgment was rendered by the court without a jury upon an agreed statement of facts substantially as follows:

"The property in front of which the paving was done, and for payment of which paving plaintiff seeks recovery in this suit, was the

⊜═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

community property of T. H. Scanlan and his wife, Mrs. Sophia H. Scanlan, who had eight daughters. Mrs. Sophia H. Scanlan died in the year 1897, intestate, and her community half in said property descended to her said daughters. T. H. Scanlan died in the year 1906, intestate, and his community half of said property passed to his said daughters. Since the death of said parents, and before any of the preliminary steps were taken looking to the paving of the street involved in this suit, three of said daughters had died intestate, and their interests in said property have passed to their surviving sisters, namely, Kate Scanlan, Lillian Scanlan, Charlotte Scanlan, Alberta Scanlan, and Stella Scanlan, who are of legal age and unmarried and were so before any of said steps were taken looking to the paving of the street involved in this suit. The five surviving sisters just named now own the property involved in this suit, and did so before any of said steps were taken, by virtue of inheritance from their father, mother, and three sisters, all deceased, as aforesaid. The said T. H. Scanlan and his wife and family lived in the city of Houston a great many years, and were and are well known in said city, and the said T. H. Scanlan and his wife and the three deceased daughters died in said city of Houston, and the old family homestead that has been occupied by the family for more than 30 years on Main street in said city is occupied by said surviving five daughters, whose names all appear in the City Directory; and all of such facts were true before any of said preliminary steps were taken for paving said street.

"Defendant Miss Kate Scanlan, as is generally well known, in behalf of herself and her sisters, maintains an office in and operates the 11-story Scanlan Building at the corner of Main street and Preston avenue, in the city of Houston, and has done so for many years. * * * The deed records of Harris county disclose that after the death of T. H. Scanlan all of the surviving children gave a power of attorney to defendant Kate Scanlan to manage their joint properties. All of such facts were true; before any of such preliminary steps were taken, the individual names of the surviving five daughters who own said property, and who have been named above, and who are named in plaintiff's petition as owners of said property, could readily have been secured and were readily secured by plaintiff when he prepared his petition in this suit.

"There has never been maintained in the probate court of Harris county, Tex., or elsewhere, such an estate of any kind as T. H. Scanlan Estate, nor is same incorporated, or in any manner a separate legal entity as such. The title to the property involved in this suit, however, and other real estate in said county, being community property of said marriage, and the deed thereto standing in the name of T. H. Scanlan, and having theretofore been assessed for taxes in the name of T. H. Scanlan during his lifetime, were controlled by the said T. H. Scanlan after the death of Mrs. Sophia H. Scanlan in 1897, and up to the date of his death in 1906.

"That since the execution of the power of attorney above referred to (which power of attorney gave Kate Scanlan power to handle all the property of her sisters as if it was her own), the defendant Miss Kate Scanlan has acted under said power of attorney in the management of the properties so inherited by defendants from their deceased parents. That she has at all times during said period maintained an office in the city of Houston, the Scanlan Building, in the name of 'T. H. Scanlan Estate' for the purpose of conducting said business. That all lease contracts for tenants in said Scanlan Building and other leased properties inherited by said daughters have been executed in the name of T. H. Scanlan Estate. That all properties belonging to them and situated in the city of Houston have been assessed for taxes on one assessment sheet, both in the county and state and city of Houston, in the name of T. H. Scanlan Estate; and that, in dealing generally with said joint property, defendants for convenience have done so in the name of T. H. Scanlan Estate, by which name said properties are and have for a number of years been commonly known in the city of Houston; but in the execution of any legal papers affecting the title to real estate, said surviving sisters have signed same in their individual capacity in conveying their joint properties, and in their personal and domestic affairs they transact same in their individual names. That said defendants are such joint owners of other properties in the city of Houston besides said Scanlan Building and the properties involved in this suit. That the total assessment for taxes of said joint properties amounts and has amounted to more than $700,000, as shown by the tax record of Harris county, and the city of Houston.

"The said Miss Kate Scanlan is still acting in the management and control of said joint properties. That T. H. Scanlan and Timothy H. Scanlan were one and the same person.

"In each and every proceeding from the first preliminary step to the final act by the city council of the city of Houston, in undertaking to assess personal liability against the five persons hereinabove named owning said property jointly at such times and to establish a lien against their said property for the paving and improvement done in front of said property involved in this suit, none of said five persons were named or individually identified or described as owners of said property, and the only expression used to indicate the owners of said property in all of said proceedings, resolutions, ordinances, and assessments was the term 'T. H. Scanlan Estate.' That all published notices constituting a part of said proceedings described said property as belonging to said T. H. Scanlan Estate, and the copies of notices provided by the city charter to be mailed to the owner or owners of such property were, in fact, mailed in an envelope addressed to T. H. Scanlan Estate, Scanlan Building, Houston, Tex., being the place where the said Miss Kate Scanlan at that time kept and maintained her office, and were received by the said Miss Kate Scanlan. That if in the notice above mentioned the use of the expression 'T. H. Scanlan Estate' in said proceedings, in view of the other facts herein agreed to, was sufficient, all the provisions of the charter and ordinance of the city of Houston and all proceedings of every character necessary to fix the personal liability of the defendants and the lien on said premises were complied with, and the judgment is correct.

"That the improvements called for by said

improvement proceedings were completed by plaintiff and accepted by the city of Houston. That no payments have ever been made by defendants on account thereof, but requests for such payments made by plaintiff were ignored, and that plaintiff had declared the entire amount of the paving certificate issued to him to be due and payable before this suit was instituted. That defendants failed to appear and object to or contest any of the proceedings incident to or connected with the improvement of said street, or to institute suit in court of competent jurisdiction to contest the validity in whole or in part of said assessment, and lien or personal liability as fixed by said proceedings.

"That a reasonable attorney's fee to be allowed plaintiff in the event of his recovery in this suit is the sum of $400."

It is to be observed from the foregoing agreement that it is agreed that if the notice addressed to the "T. H. Scanlan Estate" and received by Miss Kate Scanlan was a sufficient notice under the provisions of the city charter, the judgment should be affirmed. We shall therefore confine our discussion to that sole issue.

The proceedings by virtue of which the pavement abutting on the property of appellants was laid and the debt and lien sought to be established and foreclosed are authorized by the charter of the city of Houston.

Those parts of said charter pertinent to the contentions of the appellants are substantially as follows:

(1) The city council shall by resolution require the city engineer to prepare and file with the city council specifications for the proposed improvements together with a written statement which shall contain the names of the persons, firms, corporations, and estates owning property abutting on a street or a portion thereof which is proposed to be improved.

(2) When such statement is made, the city council shall by resolution order a hearing to be given before said council to such owners, their agents or attorneys, and set a time and place for the same.

(3) The city council shall give notice of said hearing, causing the same to be published in some daily newspaper of general circulation in the city of Houston, and shall also give notice of said hearing by posting copies thereof in the post office in Houston, Tex., by registered mail, addressed to said property owners if their address be known, but if not known, then to their agents or attorneys, if known.

(4) That after the contract for such improvements is entered into, the city engineer shall at once prepare and file with the council a written statement which shall contain the names of the persons, firms, corporations, or estates owning property abutting on the highway or portion thereof to be improved, etc. That said statement shall be examined by the city council and any errors or mistakes therein corrected and approval thereof declared by resolution. That said resolution shall order a hearing to be given before the city council to the owners of the property abutting on said highway, their agents or attorneys, and set a time and place for same, at which the opportunity shall be given to said owners to be heard concerning the special benefits, if any, to said property by means of said improvements or concerning any error or invalidity in any proceeding or concerning any matter or thing connected therewith. Said resolution shall direct the city secretary or other officer to give notice of said hearing by publishing a copy of said resolution. The city secretary shall also give notice of said hearing by posting copies of said notice in the post office in Houston, Tex., by registered mail addressed to said property owners, if their addresses be known, but if unknown then to their agents or attorneys if known. This notice by mail being cumulative only.

It is the contention of the appellants that the proceedings of the city council relative to fixing the debt and lien against their property were invalid against them, in that such proceedings were directed against the "T. H. Scanlan Estate" and not against them individually; that the charter provisions required not only that the engineer should give the names of the persons, firms, corporations, and estates owning property abutting on the highway to be improved, but that the notice required to be given to the owners requires that notice should be given to each individual person who owns any interest in any property abutting on said highway whether their interest be joint or several; and that the provisions of the charter, in the respect mentioned have not been complied with in the levy made against them and their property, and are therefore invalid.

We do not think the provisions of the city charter can be construed to mean that it is necessary to the validity of the notice, required to be given to owners, that such notice shall be given personally to each individual person who may own some property abutting on the street to be improved, jointly with others, or that it is necessary for the engineer, in making the statements required by him, to state in every instance the name of each person who owns an interest in the abutting property.

It will be observed from a reading of the provisions of said city charter that it requires the city engineer to inform himself as to what persons, firms, corporations, or estates own property abutting on the street to be improved and to thereafter convey such information to the city council, in writing.

We think that by such provisions it was intended to require the engineer to inform the city council as to what person, group of persons, firms, corporations, or estates own

the several properties abutting upon the contemplated improvements, to the end that the costs of such improvements may be properly apportioned to such persons, groups of persons, firms, corporations, or estates, and to their several properties. There is nothing in such provision to lead us to believe that it was intended thereby to require said engineer to name each person, in a group of persons, who jointly own property abutting on the proposed improvement, especially so when such property is managed and controlled by one of such group by the consent of the others of such group, and where such property is managed, controlled, and handled under a designated name, as has been done in the present case. Nor do we think that the provisions of the charter, requiring notice to be given to the owners of property abutting on the proposed improvement, should be construed as requiring notice of the hearings mentioned to be given to each person who may own a joint interest in certain property abutting on such improvement, where, as in this case, the property has been placed under the control of one of a group of joint owners to be handled under a designated name, to wit, "T. H. Scanlan Estate." It was clearly the purpose, in adopting the provisions of the city charter mentioned, to require notice to be given by registered mail to the owners of property to the end only that such person in control, as in the present case, might appear at the hearing of which notice is required, and there make objections, if any he has, to the proceedings of the city council, relative to the proposed improvement.

Having reached the conclusions as above expressed, it becomes our duty to affirm the judgment, and it is so ordered.

Affirmed.

### On Motion for Rehearing.

Plaintiffs in error have filed their motion for rehearing and therein attack the conclusion reached by this court, to the effect that the notice addressed to the "T. H. Scanlan Estate," which was received by Miss Kate Scanlan, was a sufficient compliance with the city charter relative to the notice to be posted in the post office.

We see no reason to recede from our conclusion, and as tending to support the same we cite Elmendorf v. City of San Antonio (Tex. Civ. App.) 223 S. W. 631.

In the case above cited the San Antonio court held that, in considering the question of the notice to be given to property owners of the purpose of a city to pave its streets, "cases involving citations are not helpful because the decisions are based upon mandatory statutes prescribing that the names of all parties must be given." The court then said:

"In passing upon the reasonableness of notice given, it is necessary to consider the nature of the governmental power sought to be exercised and the result sought to be accomplished. It should be suited to the efficient exercise of the power and adapted to attain the desired result, as well as just to the parties to be affected. The levy of special assessments for local improvements is an exercise of the taxing power, and, while notice and a hearing are required because the owners have a right to be heard on the questions of apportionment and benefits, still it is obvious that to require too great strictness as to matters of form will seriously hamper the governmental agency in the exercise of its powers. We conclude that the notice involved in this case is not void for unreasonableness in failing to state the names of the three defendants instead of describing them as the children of Mary Elmendorf. We therefore hold that it was sufficient under the terms of the statute. As persuasive of the correctness of this holding, we cite Klein v. Tuhey, 13 Ind. App. 74, 40 N. E. 144; Kendig v. Knight, 60 Iowa, 29, 14 N. W. 78."

The motion is refused.